*344 The opinion of the court was delivered by
McEnery, J.
Since the submission of this case one of the plaintiffs, Hebert, has died, and the duly appointed and qualified administrator of his succession has been made a party plaintiff and apellant, in the place of said deceased, Emile S. Hebert.
One of the defendants, Máxime Dupaty, kept a livery stable in the town of Napoleonville. He was a popular proprietor of the establishment, and did a thriving business. This fact induced the plaintiffs, Hebert & Damare, to purchase the outfit of the stable, consisting of horses, harness and vehicles.
The sale was perfected on the 9th of February, 1887. In the act of sale Dupaty leased the premises on which the stable was located for a term of five years to the plaintiffs, with the privilege of renewal. The following clause is in the lease: “The lessor' binds and obligates himself not to keep a public stable during the term of said lease, either directly or indirectly, within a radius of six miles of Napoleonville.”
Dupaty sold to Dugas, another defendant, certain ’property in the town of Napoleonville, which included that leased by Hebert & Damare from Dupaty. Dugas sold his property to William L. Phelps, the last defendant. Phelps and Dugas are brothers-in-law. In the act of sale by Dupaty to Dugas, plaintiff’s lease is referred to, and it .is stipulated as an additional consideration of the sale, that the vendor, Dupaty, sold to Dugas, his heirs-and assigns, the revenues of the lease during its duration, and all other benefits arising therefrom. Phelps has collected the revenue from the leased premises of the plaintiffs.
These acts of sale and lease were recorded, and the parties all knew of the terms and conditions of the sale from Dupaty to the plaintiffs. Phelps erected, established and conducted a livery stable directly in front of the stable of plaintiffs. They are rival establishments.
This suit is brought to recover $10,000 damages against defendants for the establishment and conducting of said livery stable business. In substance the allegations in the petition are that Dugas and Phelps having full knowledge, due notice, and being well aware of the lease of petitioners and all of its stipulations, as well of the sale by the said Máxime Dupaty to petitioners, that the said Dupaty, who was bound not to keep, during the pendency of the *345 said lease, a public livery stable, either directly or in directly within a radius of six miles of the town of Napoleonville, went to the said Dupaty and entered into a conspiracy with him, and they colluded together to crush and ruin the petitioners in the business of public livery stable, by erecting, establishing and conducting the public livery stable on the premises purchased by said Phelps from Dupaty.
Testimony was offered and admitted to show that the “ good will” of the livery business carried on by Dupaty was also sold to the plaintiffs. It was admitted, that the sale from Dupaty to plaintiffs enumerates every item, with a valuation, sold to plaintiff. Nothing is said in the act of sale of the “ good will” of the establishment. The evidence was inadmissible, as it added to and contradicted the written act of sale, in which there was no ambiguity or uncertainty. But admitting that the “good will” of the business was sold to plaintiffs it could not have any bearing in the case.
The stipulation of Dupaty was not to keep a public livery stable within a radius of six miles of the town of Napoleonville. There is no evidence whatever in the record that he has done so; nor is there any evidence that he is in any way interested in the stable conducted by Phelps.
The record fails to show that there was any collusion between the defendants to injure the plaintiff's. Dupaty was compelled to sell the property to pay a mortgage debt of $2000 upon it, which was past due, and for which a demand had been made upon him.
Phelps had been conducting a livery stable at an undesirable locality, and availed himself of the opportunity offered, to purchase the property from Dupaty, a part of which was leased to plaintiffs.
He did not have sufficient means. His brother-in-law, Dugas, agreed to furnish him the money, and he sought advice as to the means of securing himself. He was instructed to purchase it in his own name, sell to Phelps and retain the vendor’s privilege and a special mortgage for the price. All'the defendants under oath deny any intention to injure plaintiffs, and Phelps especially, except in a fair competion for patronage. No evidence is offered to contradict this.
The contention of plaintiffs that Dugas and Phelps, by purchasing from Dupaty, became bound as Dupaty was, not to keep a public livery stable within a radius of six miles of the town of Napoleon- *346 ville, can not be maintained. We do not see in what manner or process of reasoning we can arrive at the legal responsibility of defendants as contended for by plaintiff.
On this point in the case the decision of the judge a quo is exhaustive. In his opinion he says:
“Dupaty did not stipulate that no livery stable should be kept on-the balance of the property during plaintiffs’ lease, but that he would not keep a livery stable himself directly or indirectly during that time. It was not a burden that he placed upon the property itself, but an obligation that he imposed upon himself.
“Viewing the obligation of Dupaty, therefore, as one entirelypersonal, it is a self evident proposition that neither Dugas nor Phelps became in any manner bound to plaintiff not to keep a livery stable unless they contracted the same obligation by the terms and stipulations of the two sales of 28th July, 1889. It is not to be presumed that Dr. Dugas or W. L. Phelps intended to assume the personal obligation of Dupaty, when, as plaintiffs themselves say, the very object of Phelps in acquiring the property was to put up a livery stable upon it. Such an intention on the part of Dugas and Phelps is entirely unreasonable.”
There is no error in the judgment, and it is therefore affirmed.